UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ADAM MILLER,

                   Plaintiff,

        -against-              **MEMORANDUM AND ORDER**

NEW YORK CITY DEPARTMENT OF EDUCATION,    13 Civ. 8114 (NRB)
OLGA LIVANIS, TINA YU, JULIA CUNNINGHAM,
KARED ROSOFF, AND BRENDAN ALFIERI,

                  Defendants.
------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


      Plaintiff Adam Miller ("Miller") brings this action against the New York City Department of Education ("DOE"), Olga Livanis, Tina Yu, Julia Cunningham, Kared Rosoff, and Brendan Alfieri (collectively the "defendants").  Plaintiff alleges violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).  Defendants have moved to dismiss the complaint as barred by Miller's waiver in a Stipulation Agreement and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated herein, we grant the motion.

**BACKGROUND**

## I.  Factual Background

Miller is a tenured New York City teacher, who began teaching at the New Explorations into Science, Technology & Math (NEST+m) school in August 2003.  Cmplt. ¶ 18.  Shortly before the start of the 2006-2007 school year, defendant Olga Livanis was appointed as principal of NEST+m.  Id. ¶ 20.  From the time of her arrival, Livanis and Miller formed a contentious and hostile relationship,[1] resulting in plaintiff receiving an allegedly unwarranted "unsatisfactory" rating for the 2007-2008 school year.  Id. ¶ 28.

Upon receipt of the rating, Miller was told that he would likely receive another "unsatisfactory" rating at the end of the next school year if he chose to stay at NEST+m.  Id. ¶ 30.  The receipt of another "unsatisfactory" rating had the likely consequence of sullying his teaching reputation and freezing his annual salary.  Id. ¶ 29.  To avoid this outcome, Livanis offered to remove the rating in exchange for Miller's tender of a post-dated resignation letter and agreement to transfer to another school.  Id. ¶ 31.  Miller consented to this arrangement and tendered a resignation letter, id. ¶ 32, but Livanis failed to remove the negative rating from his record.  Id. ¶ 35.  When Miller

---

[1] Livanis allegedly removed plaintiff from his position as Chair of the English Department, reassigned him from teaching Advanced Placement English, refused payment for additional classes and school activities she had him supervise, and suspended the student newspaper that Miller founded and advised.  Cmplt. ¶ 22.

subsequently attempted to rescind his resignation, Livanis denied Miller's attempts to return to NEST+m and threatened to have him removed if he sought to resume his duties.  Id. ¶¶ 36—39.

These events gave rise to two state court lawsuits.  In December 2008, Miller sued pursuant to an Article 78 special proceeding in New York Supreme Court to rescind the resignation. Id. ¶ 45.  He also commenced a separate state court action against Livanis for tortious interference with his contractual rights in August 2009.  Id. ¶ 52.  In May 2010, New York Supreme Court Justice Jane Solomon, presiding over the Article 78 action, held that Miller's resignation was the result of coercion and dishonesty and ordered Miller reinstated to his teaching position at NEST+m. Id. ¶ 46.

However, the DOE disregarded the order and assigned plaintiff instead to a non-permanent position in the absent teacher reserve at the Art & Design High School, an allegedly inferior high school. Id. ¶ 48.  As a result, Miller returned to state court and filed an Order to Show Cause to compel his reinstatement at NEST+m.  Id. ¶ 49.  On September 3, 2010, Justice Solomon again ordered the DOE to return Miller to his previous post.  Id. ¶ 50.  Nevertheless, when Miller attempted to return to NEST+m on September 6, 2010, he was denied entry by several security guards and police officers allegedly acting under Livanis's directive.  Id. ¶¶ 53—56.

3

Consequently, on October 15, 2010, plaintiff moved to hold defendants in contempt of the state court ruling, at which point Justice Solomon directed the DOE to place plaintiff in a school with a similar academic profile to that of NEST+m. Id. ¶ 60. However, before Miller could be placed in a suitable alternative school, defendants agreed to allow Miller to return to his original post at NEST+m. Id. Following a stipulation dated November 8, 2010, and a resolution of his monetary claims, Miller finally returned to NEST+m on November 15, 2010. Id. ¶ 61.

Upon returning to the school, however, Miller alleges that he faced "a continuous, pervasive and relentless campaign of retaliation and harassment" as a result of his earlier litigation, protests, and complaints. Id. ¶ 62. Specifically, Miller was allegedly subjected to a litany of formal reviews and observations (unlike any other teacher at the school), allowed to teach only as a "team-teacher" and for a limited amount of time per class period, unfairly rated as "unsatisfactory" and thereby precluded from receiving any raises, and required to attend a string of disciplinary hearings concerning his interactions with the administration, all in an attempt to build a false record in order to remove him from NEST+m. Id. ¶¶ 63—161. Miller responded negatively to these developments, alleging that the disciplinary actions were conducted in bad faith and for retaliatory and

harassment purposes.  See, e.g., id. ¶¶ 74, 78, 81, 100—03, 150—
51.  This in turn prompted further disciplinary hearings to address
Miller's allegedly inappropriate complaints and "insubordination,"
resulting in a cycle of antagonism.

As a result of this antagonism, Justice Solomon again asked
the parties to arrange for plaintiff's transfer from NEST+m to an
equivalent school.  Defendants allegedly delayed such action and
ultimately offered to transfer Miller on a trial-basis to another
allegedly inferior school.  Id. ¶ 148.  Miller therefore rejected
the offer and the cycle of disciplinary actions and opposition
continued.

These disputes culminated in Miller's receipt of charges for
a § 3020-a disciplinary hearing in May 2012.  The charges included
thirty-eight specifications in which Miller was accused of
"unprofessional conduct" and advised that there existed just cause
for his termination.  Id. ¶ 162.

In response to these charges, Miller entered into a
Stipulation Agreement ("the Stipulation") in February 2013, id. ¶
163, under which the DOE agreed to discontinue the disciplinary
hearing in exchange for plaintiff's admission of guilt, payment of
a fine, and waiver of his rights to "make any legal or equitable
claims" "arising from or related to this matter."  Clark Decl. Ex.
A.  The Stipulation further noted that the parties entered the

agreement "freely, knowingly and openly, without coercion or duress," id., and Miller was represented by counsel throughout the § 3020-a process culminating in his signing of the Stipulation. Cmplt. ¶ 164.  As a result of this stipulation, Miller remained employed by the DOE, but was reassigned from NEST+m to the Absent Teacher Reserve.  Id. ¶ 163.

## II.  Procedural Posture

Miller filed an initial complaint on November 14, 2013 and, after a pre-motion conference on March 4, 2014, filed an amended complaint on April 10, 2014.  This complaint alleges that defendants' actions towards Miller upon his return to NEST+m exhibited an unlawful pattern of retaliation and harassment in violation of Miller's constitutional rights, as secured to him under the First Amendment, the Equal Protection Clause, and the Due Process Clause.  Defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) on May 2, 2014 and the motion was fully briefed on July 22, 2014.

## DISCUSSION

## I.  Legal Standard

When deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must

accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Harris v. Mills, 572 F. 3d 66, 71 (2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  If he has not "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (finding that a plaintiff's allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" to survive a motion to dismiss).  This standard applies to "all civil actions," including retaliation suits.  Iqbal, 556 U.S. at 684.

When determining the plausibility of a complaint, the Court may also consider documents attached as exhibits and documents incorporated by reference in the complaint.  Halebian v. Berv, 644 F.3d 122, 131 n.7 (2d Cir. 2011); Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008).

## II.  Plaintiff Has Waived His Right to Bring the Present Claims

A release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced.

7

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 2011). This standard applies to waivers of constitutional rights. See Bormann v. AT & T Communications, Inc., 875 F.2d 399, 402 (2d Cir. 1989), cert. denied 493 U.S. 924 (1989) (dismissing Title VII claims); Mandavia v. Columbia Univ., 12 CIV. 2188 JPO, 2013 WL 2391695 (S.D.N.Y. June 3, 2013) aff'd, 556 F. App'x 56 (2d Cir. 2014). However, the waiver of "any fundamental right can neither 'be presumed nor may it be lightly inferred.'" Doe v. Marsh, 105 F.3d 106, 111 (2d Cir. 1997) (quoting United States v. Mapp, 476 F.2d 67, 77 (2d Cir. 1973).

We find that the present action is barred by the Stipulation Miller signed to resolve his § 3020-a proceeding, in which Miller waived all "rights to make any legal or equitable claims or to initiate legal proceedings or administrative hearings of any kind against each or any employee thereof, relating to or arising out of this matter, except to enforce this Stipulation of Settlement now or in the future."

**A. The Stipulation Unambiguously Bars Miller's Present Claims**

First, we find that the scope of the waiver encompasses the constitutional claims brought here. Specifically, the "matter" addressed in the 3020-a action was Miller's "unprofessional conduct," including his complaints, protests, and "insubordination," which arose as a response to, and prompted more

of, the administration's allegedly retaliatory and discriminatory tactics.   The very same conduct--Miller's remonstration and litigiousness and defendants' alleged retaliation and harassment--forms the basis for Miller's constitutional claims here.   In essence, Miller seeks to relitigate the question of the propriety of his conduct vis-à-vis the defendants' disciplinary hearings that was resolved in the 3020-a action.   As such, the present action clearly "relat[es] to or aris[es] out of" the subject of the 3020-a proceeding and is barred by the stipulation.

Miller seeks to avoid enforcement of the waiver here by arguing that the phrase "this matter" refers not to the interactions that underlie the § 3020-a charges, but rather to the § 3020-a proceeding itself. Under this reading, the Stipulation is a limited release that bars only claims related to the actual conduct of the § 3020-a action.

However, such a reading is belied by the nature and language of the release.  First, although the Stipulation releases Miller's claims arising out of "this matter" rather than "any claims known or unknown," the waiver is nevertheless a general form release, which other courts have held to bar related claims.  See Lewis v. NYC Dep't of Educ., 12 Civ. 675 NRB, 2013 WL 5405534 (S.D.N.Y. Sept. 25, 2013) (upholding same waiver as general release barring discrimination claims brought after disciplinary hearing for

9

unprofessional conduct); cf. Tromp v. City of New York, 465 F. App'x 50 (2d Cir. 2012) (finding that clause releasing only "claims which were or could have been alleged by me in the aforementioned action" "did not limit the scope of the [waiver as a] General Release [but] simply evidenced the parties' intent to resolve the litigation at hand," because "[i]f the parties had desired to enter into a limited release, barring only claims arising out of the specific events [preceding the release], they could have expressly done so, but they did not").

More importantly, such a reading ignores the Stipulation's explicit caveat that the release would not bar plaintiff's ongoing state court action for tortious interference.  We find such a reading implausible, as the parties negotiated to specifically exempt plaintiff's ongoing state law claims against defendant Livanis for tortious interference with contract.  If the waiver in fact encompassed only issues arising from the limited conduct of the § 3020-a action, such an exemption would be redundant or extraneous.  Rather, the inclusion of this specific exemption suggests the parties understood that the Stipulation would bar any and all claims related to the plaintiff's employment disputes, and that they chose to negotiate and except only the pre-existing state court action.  As such, plaintiff's current claims clearly relate

to the 3020-a "matter" and fall within the scope of the Stipulation's waiver.

### B. Plaintiff's Waiver was Knowing and Voluntary

Having found that the Stipulation covers the instant litigation, we next address whether the Stipulation was signed knowingly and voluntarily and can thus be enforced to bar plaintiff's claims. "[A] a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998). In the employment context, whether an employee signed a waiver knowingly and voluntarily is assessed in light of the totality of the circumstances, looking especially at the following factors: (1) the plaintiff's education and business experience; (2) the amount of time that the plaintiff had possession of or access to the agreement before signing it; (3) the plaintiff's role in deciding the terms of the waiver agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney prior to signing the agreement; (6) whether the consideration given to the plaintiff in exchange for the waiver exceeds the employee benefits to which the plaintiff was already entitled by contract or law; (7) whether the employer encouraged or discouraged the plaintiff to consult with an attorney; and (8) whether the plaintiff had a fair opportunity

to consult with an attorney prior to signing the agreement. Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989); see also Livingston v. Adirondack Beverage Co., 141 F.3d 434, 438 (2d Cir. 1998); Mandavia v. Columbia Univ., 12 CIV. 2188 JPO, 2013 WL 2391695 (S.D.N.Y. June 3, 2013) aff'd, 556 F. App'x 56 (2d Cir. 2014).

Miller contends that the second and fourth factors weigh in favor of nonenforcement. First, he argues that the fact that he and his attorney were given only one day to review the Stipulation is sufficient to establish a question of involuntariness. However, "the day afforded to [Miller] was more than sufficient[, as c]ourts often have held that even a few hours is ample time within which to review a release." Boudinot v. Shrader, 09 Civ. 10163 LAK, 2013 WL 1481226 (S.D.N.Y. Apr. 10, 2013); see also Shain v. Ctr. for Jewish History, Inc., 04 Civ. 1762 (NRB), 2006 WL 3549318, at *4 (S.D.N.Y. Dec. 7, 2006) (finding several hours "more than adequate to fully read and understand the brief and straightforward language of the release"). Additionally, plaintiff does not suggest in his pleadings that he raised concerns about the time allotted for consideration before agreeing to the waiver, nor does he allege that he asked for additional time to review and was denied.

Second, Miller asserts that the language of the release was ambiguous, reasonably leading him to believe that it was limited in scope.  As a result of this ambiguity, underscored by his attorney's assurances that future constitutional claims would not be barred, Miller argues that he did not knowingly waive his constitutional claims, which he thought were outside the scope of the waiver.  However, as discussed above, the waiver is a general release that clearly and unambiguously bars Miller's related claims.  We also note that, despite engaging in negotiations sufficient to exempt plaintiff's state court action, neither plaintiff nor his attorney voiced concern as to ambiguity in the waiver or made an attempt to get on-the-record clarification for the terms now challenged as ambiguous.  Clark Decl., Ex. B.

Moreover, the other six Bormann factors clearly support the conclusion that the waiver was entered into knowingly and voluntarily.  Miller is an educated person with years of experience as an English teacher who therefore possesses the requisite skill set to read and comprehend the waiver provision.  Miller played an adequate role in deciding the terms of the waiver, as evidenced by his ability to specifically exempt his state-law claim from an otherwise standard-form waiver agreement.  See, e.g., Russomanno v. Murphy, 09 Civ. 8804(RJH), 2011 WL 609878, at *4 (S.D.N.Y. Feb. 16, 2011) (finding plaintiff had significant role where he was

able to negotiate for higher severance pay).  He was represented by an attorney throughout the process and was able to consult with his counsel about the terms and scope of the waiver prior to signing.  Cmplt. ¶¶ 165—167.  Finally, he received valuable consideration, as his agreement to the waiver avoided the continuation of the § 3020-a proceeding, which could have resulted in his termination. Id. ¶ 162.

Accordingly, on the totality of the circumstances, we find that Miller executed the waiver knowingly and voluntarily and that the Stipulation therefore bars his present claims.

## III. Plaintiff Fails to State a Claim on Which Relief Can be Granted

Even if plaintiff had not waived his constitutional claims in the Stipulation, they would nevertheless be dismissed for failure to state a claim.

### A. 42 U.S.C. § 1983

#### 1. First Amendment Retaliation

We first address Miller's claim that defendants' disciplinary actions served as retaliation for his protests, litigations, and comments in violation of his First Amendment rights.  We find that Miller has not pled facts sufficient to show that his speech addressed a matter of public concern and that such speech therefore does not warrant constitutional protection under Section 1983.

14

To state a claim of First Amendment retaliation under Section 1983, a plaintiff must show 1) that his speech was constitutionally protected; 2) that he suffered an adverse employment action; and 3) that a causal relationship existed between the speech and the adverse employment action.  <u>Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.</u>, 411 F.3d 306, 313 (2d Cir. 2005). For a public employee's speech made in the course of employment to warrant constitutional protection, the employee must show that he "spoke as a citizen on a matter of public concern." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 417 (2006).

Whether an employee's speech addresses a matter of public concern and is thus protected is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record. <u>Lewis v. Cowen</u>, 165 F.3d 154, 163 (2d Cir. 1999) (citing <u>Connick v. Myers</u>, 461 U.S. 138, 147—48 & n.7 (1983)).  The central question is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose." <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 189 (2d Cir. 2008). "[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." <u>Lewis</u>, 165 F.3d at 164. However, it does not follow that a person motivated by a personal grievance cannot be

15

speaking on a matter of public concern; the speaker's motive alone is not dispositive of the public concern issue.  Sousa v. Roque, 578 F.3d 164, 173—74 (2d Cir. 2009).

Here, the "litigation, protests, complaints, [and] comments" for which Miller alleges retaliation do not address a matter of public concern but are rather focused entirely on defendants' treatment towards him alone. Both of Miller's state court lawsuits concerned problems with and sought redress limited to his own personal employment circumstances. Likewise, plaintiff's in-school comments and protests disputed the propriety of the administration's actions with respect to him alone, such as his being singled out for numerous formal observations and disciplinary meetings, and did not allege any system-wide policy affecting the school as a whole. Even in this lawsuit, Miller complains solely of personal damage and seeks only personal relief.

Plaintiff insists that his complaints amount to a matter of public concern insofar as they may reveal public wrongdoing or corruption, issues held to be of public concern. See Johnson v. Ganim, 342 F.3d 105, 112—113 (2d Cir 2003); Harmon v. City of New York, 140 F.3d 111, 118 (2d Cir. 1998).  However, unlike public corruption cases that allege a broad impact on other citizens, here, the only stated victim impacted by the administration's actions was the plaintiff himself.  Indeed, elsewhere in the

complaint, Miller expressly argues he is treated differently from other "similarly situated" individuals, further suggesting these harmful actions applied only to him.  While Miller suggests that there may exist some implied negative effect to others because of the administration's actions towards him, he cannot rely on such a tenuous effect to the public to transform a personal complaint into a public concern.  See Ruotolo, 514 F.3d at 190 ("'[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.' A generalized public interest in the fair or proper treatment of public employees is not enough.") (quoting Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007)).

Accordingly, we find that the plaintiff fails to state a valid claim of First Amendment retaliation under § 1983.

### 2. Equal Protection

Plaintiff next argues that, in their attempts to harass and retaliate against him, defendants treated him differently from "similarly situated individuals" and thereby violated his rights under the Equal Protection Clause.  In support of this equal protection claim, Miller has not alleged that he was a member of a protected group, but relies instead on a "class-of-one" theory.

Claims for violations of the Equal Protection Clause follow one of two approaches.  Generally, a plaintiff will allege

membership in a protected class or identifiable group and discriminatory treatment based on that status. See Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008) (noting that Equal Protection jurisprudence has "typically been concerned with governmental classifications that affect some groups of citizens differently than others"). However, in some circumstances, the Court has allowed individuals to sustain an equal protection claim on a "class-of-one" theory when the plaintiff has been irrationally singled out. See, e.g., Vill. of Willowbrook v. Olech, 528 U.S. 562, 564—65 (2000).

Here, Miller does not plead that he is a member of a protected group, relying instead on the "class-of-one" theory. However, the "class-of-one" theory does not apply to public employees. See Engquist, 553 U.S. at 609 (noting that "[p]ublic employees typically have a variety of protections from arbitrary or malicious personnel actions" and refusing to "impermissibly 'constitutionalize the employee grievance'") (citing Connick, 461 U.S. at 154); Appel v. Spiridon, 531 F.3d 138, 139—40 (2d. Cir. 2008) ("[T]he Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one' theory of liability.").

Accordingly, because Miller "claims only that he was treated differently from other similarly situated employees for malicious

reasons . . . and not on the basis of his membership in any particular class, his equal protection claim is barred by Engquist." Massi v. Flynn, 353 F. App'x 658, 660 (2d Cir. 2009).

### 3. Procedural Due Process

Plaintiff next asserts that he has a property interest in the "various procedures, policies, rules, regulations and contractual provisions that govern the manner in which teachers, such as plaintiff, are to be treated" and that, by departing from these policies in a malicious and biased way, defendants "violated the property rights he possessed as a tenured teacher". Cmplt. ¶¶ 191—96.

To state a claim for a procedural due process violation under Section 1983, a complaint must allege that the defendants deprived the plaintiff of a right secured by the Constitution or laws of the United States and that such deprivation was committed by persons acting under color of state law. 42 U.S.C. § 1983. Identifying the relevant property interest is a two-step process. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). First, a court must determine whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff. O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005). To invoke the Due Process Clause, a plaintiff must seek to "protect something more than an ordinary

contractual right," <u>S & D Maint. Co. v. Goldin</u>, 844 F.2d 962, 966 (2d Cir. 1988), or a "unilateral expectation," <u>Looney v. Black</u>, 702 F.3d 701, 706 (2d Cir. 2012) (quoting <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564 (1972)). If such a property right is found, the court must determine whether that property right "constitutes a property interest for purposes of the Fourteenth Amendment." <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748 (2005).

Here, Miller has not alleged a property interest cognizable under the Due Process Clause.  Rather, Miller seems to conflate the standard's two steps by arguing that he has a property right in the fair application of the rules and procedures secured to him as a tenured teacher.  This novel attempt, for which Miller can cite no case law, does not suffice to transform procedural expectations to a constitutionally recognized property right.  As such, Miller's procedural due process claim is dismissed for failure to identify a cognizable property interest.

**4. Substantive Due Process**

Plaintiff further alleges that, by failing to adhere to and fairly administer the various procedures governing treatment of teachers, defendants have engaged in arbitrary government action that is conscience-shocking and oppressive in violation of his substantive due process rights.

"[A] party asserting a deprivation of substantive due process must first establish a valid property interest within the meaning of the Constitution . . . . Second, the party must demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest." <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2d Cir. 1996).

However, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." <u>Velez v. Levy</u>, 401 F.3d 75, 94 (2d Cir. 2005). Specifically, when "defendants' purported actions would not--but for the allegations of [other constitutional] violations--be sufficiently shocking to state substantive due process claims, . . . plaintiff's substantive due process claim is either subsumed in h[is] more particularized allegations, or must fail." <u>Id.</u>

Here, plaintiff asserts that defendants violated his substantive due process rights by harassing him and using sham disciplinary charges "to create an intolerably abusive work environment in order to drive him from his profession." Cmplt. ¶ 101. However, "[w]hat is allegedly shocking about what the defendants did is either their intent to violate plaintiff's fundamental First Amendment rights, or their motive to deprive

h[im] of liberty without procedural due process.  In other words,
what would serve to raise defendant[s'] actions beyond the wrongful
to the unconscionable and shocking are facts which, if proven,
would constitute, in themselves, specific constitutional
violations."  Velez, 401 F.3d at 94.  As plaintiff has sought
redress for these constitutional violations elsewhere in the
complaint, his substantive due process claim must fail.

### B. 42 U.S.C. § 1985(3)

Finally, plaintiff alleges that through their coordinated
pattern of harassment and retaliatory conduct, defendants
conspired to deprive him of his civil rights under Section 1985(3).
To make out a claim under Section 1985(3), a plaintiff must show:
(1) a conspiracy; (2) for the purpose of depriving, either directly
or indirectly, any person or class of persons of equal protection
of the laws, or of equal privileges and immunities under the laws;
(3) an act in furtherance of the conspiracy; (4) whereby a person
is either injured in his person or property or deprived of any
right of a citizen of the United States. Mian v. Donaldson, Lufkin
& Jenrette Sec. Corp., 7 F.3d 1085, 1087—88 (2d Cir. 1993) (citing
1088 United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825,
828—29 (1983)).

In addition, the conspiracy must be motivated by "some racial
or perhaps otherwise class-based, invidious discriminatory animus

behind the conspirators' action." 1088 United Bhd. of Carpenters, 463 U.S. at 829; see also Britt v. Garcia, 457 F.3d 264, 270 n.4 (2d Cir. 2006); Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). The Supreme Court has "strictly construed this [class-based animus] requirement." Katz v. Klehammer, 902 F.2d 204, 208 (2d Cir. 1990) (holding that plaintiff's Section 1985(3) claim "was properly dismissed as frivolous," since the complaint was "completely devoid of any claim of class-based animus, whether economic, political, or otherwise"); see also Robinson v. Allstate, 706 F. Supp. 2d 320, 328 (W.D.N.Y. 2010) aff'd sub nom. Robinson v. Allstate Ins. Co., 508 F. App'x 7 (2d Cir. 2013) (dismissing Section 1985(3) claims where "[p]laintiff has not attempted to show, or even allege, that defendants were motivated by any class-based animus, relying instead on a 'class of one' theory").

Here, plaintiff has alleged no racial or class-based animus, relying instead, as in his Equal Protection claim, on a class-of-one theory. His Section 1985 claim is therefore dismissed.

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion to dismiss. This Memorandum and Order resolves Docket No.

9, and the Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: New York, New York
       December 2, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to
the following:

**Attorney for Plaintiff**
Alan E. Wolin, Esq.
Wolin & Wolin
420 Jericho Turnpike, Suite 215
Jericho, NY 11753

**Attorney for Defendants**
Christopher Bouriat, Esq.
Office of the Corporation Counsel
City of New York
100 Church Street
New York, NY 10007